GARMAN TURNER GORDON LLP
ERIC R. OLSEN
Nevada Bar No. 3127
Email: eolsen@gtg.legal
MICHAEL R. ESPOSITO
Nevada Bar No. 13482
Email: mesposito@gtg.legal
650 White Drive, Suite 100
Las Vegas, Nevada 89119
Tel: (725) 777-3000
Fax: (725) 777-3112
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NAC FOUNDATION, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>COREY JODOIN,<br><br>Defendant. | CASE NO. 2:16-cv-01039-GMN-VCF<br><br>**PLAINTIFFS' EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER; AND MOTION FOR PRELIMINARY INJUNCTION** |

COMES NOW Plaintiff, NAC FOUNDATION, LLC ("NAC"), by and through its counsel, the law firm of Garman Turner Gordon LLP, hereby moves this Court pursuant to Federal Rule of Civil Procedure ("FRCP") 65 and applicable case law, for immediate *ex-parte* issuance of a temporary restraining order to prevent Defendant Corey Jodoin (the "Defendant"), and anyone acting in concert with Defendant, from continued use of Confidential Information (defined below) and from otherwise violating a Mutual Non-Disclosure Agreement (the "NDA") by and between the above-listed parties.

NAC seeks immediate issuance of a temporary restraining order necessary to prevent future irreparable harm to NAC pending a hearing on the matter, as follows:

1. Defendant, and anyone acting in concert with Defendant, shall be restrained disclosing Confidential Information or from using it for any purpose, including but not limited to the purpose of disparaging or defaming NAC, its principal and affiliates, or interfering with NAC's, its principal's or affiliates' contractual

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

4852-4597-8932, v. 3

1 of 15

and/or prospective economic relationships;

2. Defendant, and anyone acting in concert with Defendant, shall be restrained from falsely holding themselves out as employees or agents of NAC; and

3. Defendants, and anyone acting in concert with Defendant, shall be restrained from any and all contact with NAC customers, investors, contractors, or any other third party whose information was obtained via NAC Confidential Information.

Following notice and hearing, the injunction should be expanded to include an order mandating that Defendants cease and desist from any and all actions that defame NAC or otherwise interfere with NAC's contractual relations or prospective economic advantage for the duration of this action.

This Application and Motion is made and based upon the Memorandum of Points and Authorities below, Plaintiffs' Complaint (the "Complaint") [ECF No. 1] filed on May 9, 2016, the Declaration of Marcus Andrade filed in conjunction herewith (the "Andrade Decl."), and the exhibits thereto, as well as any oral argument the Court may permit at a hearing of this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

This is a civil action brought by the plaintiff against the defendant for breach of contract for purchase of an interest in NAC Foundation, LLC, for breach of a non-disclosure agreement between NAC Foundation, LLC and Defendant Corey Jodoin, for breach of the covenant of good faith and fair dealing implied in both contracts, for defamation, and for intentional interference with contractual relations and perspective economic advantage.

NAC is the creator of the Aten Coin, the first-generation non-anonymous digital currency. The First Aten Coin Conference was held in Warsaw Poland in October 2015 and was a major success. After the Conference, Corey Jodoin (a resident of Alberta, Canada) approached Marcus Andrade, founder of Aten Coin and manager of NAC, unsolicited, about purchasing an interest in NAC. An agreement was reached at that time for Defendant to purchase a 5% interest in NAC from Mr. Andrade. Defendant and his wife, Brandi, were also to perform work on behalf

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

2 of 15

4852-4597-8932, v. 3

of NAC.

In furtherance of this Working Relationship (defined below), NAC and Defendant signed the NDA on or about November 3, 2015. The NDA defined Confidential Information of the company for purposes of the agreement, and it mandated nondisclosure and prohibited use of such Confidential Information. Defendant was named Chief Operating Officer of NAC, and Mrs. Jodoin was named as Chief Administrative Officer.

The Working Relationship between NAC and the Jodoins terminated on March 4, 2016, when the Jodoins repudiated the agreement and demanded both "back pay" and salaries going forward -- $10,000 per month for Defendant and $5,000 per month for Mrs. Jodoin. Despite termination of the Working Relationship, however, the Jodoins continued to hold themselves out to the public as officers of NAC, at least through the filing of the Complaint in this action.

Furthermore, beginning in late November 2015 (during the Working Relationship), and at various times thereafter, including April 27, 2016, Defendant and his wife have contacted customers of NAC, contractors, and others, by use of Confidential Information of NAC, for purposes of disparaging and defaming NAC and its management, and of intentionally interfering with the contracts and prospective business advantage of NAC. All of these communications have been in violation of the NDA and have been extremely damaging to NAC, its management, and its affiliates. This activity has continued even despite a cease and desist demand, and despite the commencement of this action, on May 12, 2016.

On May 27, 2016, NAC held an Aten Coin 2016 Conference, in association with the Chicago-Kent School of Law in Chicago. At the May Conference, an Aten Coin holder (the "Aten Coin Holder") who lives on Alberta, Canada, as do the Jodoins, informed Mr. Andrade that Defendant and his wife had convinced him that NAC and Aten Coin was a "scam." Plaintiffs believe that Defendant used Confidential Information subject to the NDA in order to do so. Further, Defendant convinced this Aten Coin holder to attend the May Conference for the specific purpose of interfering with existing and prospective coin holders and investors by publically declaring that Aten Coin was a "scam."

Based on the Jodoins' statements the Aten Coin Holder attended the Aten Coin 2016

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

4852-4597-8932, v. 3

Conference. After hearing the presentation at Chicago-Kent, however, he elected not to carry out Defendant's instructions and disclosed Defendant's scheme. Nonetheless, Defendant had already sought to use this Aten Coin Holder as a tool of interference. He had disparaged and defamed NAC, and had interfered with its contractual and prospective economic relationship with the Aten Coin Holder in order do so.

These actions breach a variety of duties owed by Defendant to NAC, among them the duties arising under the NDA. The NDA itself expressly provides that in the event of actual or potential breach of the any of its covenants, NAC shall be entitled to seek injunctive relief, including "immediate temporary injunctive relief." Because Defendant has engaged in the very type of tortious conduct described in both NAC's cease and desist demand and the Complaint, the likelihood of Defendant continuing this harmful conduct is great. In fact, Defendant knows that NAC and its affiliates have reached a critical threshold concerning in development and financing. Irreparable harm, not subject to any adequate remedy at law, will result from Defendant's continued breach of his duties. As such granting of a temporary restraining order preventing Defendant, as well as those acting in concert with him, from any further disclosures of Confidential Information, disparagement, defamation, and interference must be issued, and a motion to preliminarily enjoin such conduct must be heard at the Court's earliest convenience.

## II.

## STATEMENT OF FACTS[1]

1. NAC is the creator of the Aten Coin, the first-generation non-anonymous digital currency. (Andrade Decl. at ¶ 3).

2. The First Aten Coin Conference held in Warsaw Poland in October 2015 and was a major success. (Andrade Decl. at ¶ 4).

3. After the Conference, Defendant Corey Jodoin (a resident of Alberta, Canada) approached Marcus Andrade, founder of Aten Coin and manager of NAC, unsolicited, about purchasing an interest in NAC. (Andrade Decl. at ¶ 5).

---

[1] Unless otherwise stated, the Statement of Facts is made and based upon the Declaration of Marcus Andrade. (Ex. 1-A)

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

4852-4597-8932, v. 3

4 of 15

4. An agreement was reached at that time for Defendant to purchase a 5% interest in NAC from Mr. Andrade (the "Purchase Agreement"). (Andrade Decl. at ¶ 6).

5. Under the terms of the Purchase Agreement, Defendant and his wife, Brandi, were also to perform work on behalf of NAC (the "Working Relationship"). (Andrade Decl. at ¶ 7).

6. In furtherance of the Working Relationship, NAC and Defendant signed a Mutual Non-disclosure Agreement (the "NDA"), on or about November 3, 2015. A true and accurate copy of the NDA is attached to the Andare Decl. as **Exhibit 1-A.** (Andrade Decl. at ¶ 8; Andrade Decl. Ex. 1-A).

7. The NDA defines "Confidential Information" owned by NAC for purposes of the contract, and it mandates nondisclosure and prohibited use of such Confidential Information. All references to "Confidential Information" herein have the meaning assigned to them in the NDA. (Andrade Decl. at ¶ 9; Andrade Decl. Ex. 1-A)

8. Defendant was named Chief Operating Officer of NAC, and Mrs. Jodoin was named as Chief Administrative Officer. (Andrade Decl. at ¶ 10).

9. The Working Relationship between NAC and the Jodoins terminated on March 4, 2016, when the Jodoins repudiated the Purchase Agreement and demanded both "back pay" and salaries going forward -- $10,000 per month for Defendant and $5,000 per month for Mrs. Jodoin. (Andrade Decl. at ¶ 11).

10. Despite termination of the Working Relationship, however, the Jodoins continued to hold themselves out to the public as officers of NAC, at least through the filing of the Complaint in this action. (Andrade Decl. at ¶ 12).

11. Furthermore, beginning in late November 2015 (during the Working Relationship), and at various times, including April 27, 2016, Defendant and his wife have contacted customers of NAC, contractors, and others, by use of Confidential Information of NAC, for purposes of disparaging and defaming NAC and its management, and of intentionally interfering with the contracts and prospective business advantage of NAC. (Andrade Decl. at ¶ 13).

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

4852-4597-8932, v. 3

5 of 15

12. All of these communications have been in violation of the NDA and have been extremely damaging to NAC, its management, and its affiliates. (Andrade Decl. at ¶ 14).

13. This activity has continued even despite a cease and desist demand, and despite the commencement of this action, on May 12, 2016. A true and accurate copy of the cease and desist demand is attached to the Andrade Declaration as **Exhibit 1-B.** (Andrade Decl. at ¶ 15; Andrade Decl. Ex. 1-B).

14. On May 27, 2016, NAC held an Aten Coin 2016 Conference, in association with the Chicago-Kent School of Law in Chicago. (Andrade Decl. at ¶ 16).

15. At the May Conference, an Aten Coin holder who lives on Alberta, Canada, as do the Jodoins, informed Mr. Andrade that Defendant and his wife had convinced him that NAC and Aten Coin was a "scam." (Andrade Decl. at ¶ 17).

16. Plaintiffs believe that Defendant used Confidential Information subject to the NDA in order to do so. (Andrade Decl. at ¶ 18).

17. Further, Defendant convinced this Aten Coin holder to attend the May Conference for the specific purpose of interfering with existing and prospective coin holders and investors by publically declaring that Aten Coin was a "scam." (Andrade Decl. at ¶ 19).

18. Based on the Jodoins' statements, the Aten Coin Holder attended the Aten Coin 2016 Conference. (Andrade Decl. at ¶ 20).

19. After hearing the presentation at Chicago-Kent, however, he elected not to carry out Defendant's instructions and disclosed Defendant's scheme. (Andrade Decl. at ¶ 21).

20. Nonetheless, Defendant had already sought to use this Aten Coin customer as a tool of interference. (Andrade Decl. at ¶ 22).

21. Defendant had disparaged and defamed NAC, and had interfered with its contractual and prospective economic relationship with the Aten Coin Holder in order do so. (Andrade Decl. at ¶ 23).

. . .
. . .
. . .

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

6 of 15

4852-4597-8932, v. 3

## II.

## LEGAL ARGUMENT

**A.     Emergency injunctive relief is necessary to prevent irreparable harm to NAC.**

Temporary restraining orders are granted under same standards for which courts grant preliminary injunctions. *Hakkasan LV, LLC v. Miller*, No. 2:15-CV-290-JAD-PAL, 2015 WL 751094, at *1 (D. Nev. Feb. 23, 2015). Courts apply a four factor test to determine if a preliminary injunction is warranted. To obtain a preliminary injunction, the moving party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1248 (9th Cir. 2013) (*citing Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). Further, courts have authority to enjoin non-parties, such as anyone acting in concert with Defendant, whose actions threaten to interfere with compliance of orders of the court. *United States v. Crookshanks*, 441 F. Supp. 268, 270 (D. Or. 1977) (*citing Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); *United States v. Hall*, 472 F.2d 261 (5th Cir. 1972)).

Here, the NDA itself expressly provides that in the event of actual or potential breach of the any of its covenants, NAC shall be entitled to seek injunctive relief, including "immediate temporary injunctive relief." Further, NAC has established all four factors necessary to justify emergency injunctive relief. Finally, emergency injunctive relief enjoining anyone acting in concert with Defendant from engaging in the above-listed tortious acts is necessary as such acts would violate any order of this Court prohibiting future interference with NAC's contractual relations or prospective economic advantage, as requested herein.

1.    <u>NAC will succeed on its claims against Defendant.</u>

A party satisfies the "success on the merits" burden of persuasion by (a) demonstrating that it is likely to succeed on the merits of its claims; or (b) establishing that serious questions as to the merits of the claims exist and the balance of hardships tips sharply in that party's favor. *H&R Block Enterprises, Inc. v. Roberts*, No. 3:11-CV-0057-LRH-RAM, 2011 WL 666034, at *2

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

7 of 15

4852-4597-8932, v. 3

(D. Nev. Feb. 14, 2011). Where a party sets forth "sufficient facts" to support a cause of action, injunctive relief may be appropriate. *Id.* NAC has presented claims for breach of contract, breach of the duty of good faith and fair dealing, and defamation, intentional interference with contractual relations, intentional interference with prospective economic advantage, and aiding and abetting. NAC has set forth sufficient facts in support of each claim set forth in the Complaint.

    a. *Breach of Contract*.

To prevail on a breach of contract claim, a party must establish "(1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) damages resulting from defendant's breach." *Roberts*, 2011 WL 666034, at *2.

NAC and Defendant have two valid contracts at issue here: the Purchase Agreement and the NDA. The existence of both contracts are undisputed, as the dispute centers on the terms of the Purchase Agreement and the various ongoing violations of the NDA. NAC has alleged both performance under the Purchase Agreement and Defendant's breach of the same. *See* Complaint ¶¶ 20-24. NAC has been significantly damaged by Defendant's breach of the Purchase Agreement. Complaint ¶ 24. Further, Defendant has clearly breached the NDA.

NAC has provided this court with a true and accurate copy of the NDA, evidencing the valid contract. (Andrade Decl. Ex. 1-A). NAC has performed fully under the NDA, and has set forth allegations in detail pertaining to Defendant's breach of the same. Complaint ¶ 25-30. NAC is a young company offering a very valuable alternative in the digital currency market. Interest expressed at its Warsaw and Chicago conferences has been tremendous. The Company is at a critical juncture, and Defendant's repeated and continuous disparagement and interference with NAC's business has and will continue to irreparably harm NAC, if not enjoined. Based on the facts set forth above, NAC has illustrated that it maintains a high likelihood of success on the merits with regards to their breach of contract claim. Although likely success on the merits of the contract claims alone would be sufficient to support injunctive relief, NAC is also likely to succeed on the merits of its other claims, as well.

. . .

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

8 of 15

4852-4597-8932, v. 3

b. *Breach of the Duty of Good Faith and Fair Dealing.*

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *Silvas v. Bank of Am. Home Loans*, No. 2:12-CV-1994-KJD-NJK, 2013 WL 271506, at *3 (D. Nev. Jan. 23, 2013) (*citing A.C. Shaw Constr. v. Washoe County*, 105 Nev. 913, 784 P.2d 9 (Nev.1989)).  Damages are warranted where one party acts in a manner unfaithful to the purpose of that particular contract. *Id.* (*citing Hilton Hotels v. Butch Lewis Prods.*, 107 Nev. 226, 808 P.2d 919, 923 (Nev.1991)).

Here, the purpose of the NDA is spelled out in the plain language of the contract: "WHEREAS NAC and [Corey Jodoin] (the "Parties") proposed to work together in connection with a possible business relationship between the parties (the "Purpose"). . ." (Andrade Decl. Ex. 1-A at 1.)  Further, the NDA specifically outlines expectations of the Receiving Party: "A Receiving Party shall retain in confidence any Confidential Information received from the Disclosing Party." (Andrade Decl. Ex. 1-A ¶ 1.)  The NDA goes on to specify that the Receiving Party, Defendant, "will not (i) disclose such Confidential Information to any other person or (ii) use such Confidential Information for any purpose other than the Purpose" absent written consent from NAC. (*Id.*)  Defendant's ongoing and repetitive use of the Confidential Information to harm NAC violates the collaborative spirit and purpose of the NDA.  In fact, a core purpose of the NDA is to prevent precisely the type of tortious conduct that Defendant is currently engaging in.  Accordingly, NAC has a high likelihood of prevailing on the merits of this claim.

c. *Intentional Interference with Contractual Relations.*

Under Nevada law, a party must prove five elements to sustain a claim of intentional interference with contractual relations:  "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *Chase Bank USA, N.A. v. Dispute Resolution Arbitration Grp.*, No. 2:05 CV 1208 LRH (LR, 2006 WL 1663823, at *2 (D. Nev. June 9, 2006) (*citing J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev.2003)).

Here, Defendant, as the former Chief Operating Officer, is well aware of the contractual relationships that NAC has with coin holders, investors, and vendors. (Of course, he came into

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

4852-4597-8932, v. 3

9 of 15

the possession of this knowledge under the restrictions of the NDA.)  Furthermore, Defendant has made ongoing attempts to harm NAC's contractual relations, even after being warned to cease and desist; going so far as to induce the Aten Coin Holder to attend the Aten Coin 2016 Conference with the sole intent of disparaging NAC by publically labeling it a "scam." Defendant's repeated calls to customers, investors, contractors, and other parties identified via NAC's private records further supports NAC's claim for intentional interference with contractual relations.  As set forth herein, NAC has been damaged by the Defendant's tortious actions and will continue so suffer irreparable damage at the unfettered hands of Defendant. NAC has a high likelihood of prevailing on the merits of this claim.

      d. *Intentional Interference with Prospective Economic Advantage.*

Under Nevada law, a party must prove five elements to sustain a claim of intentional interference with prospective economic advantage:  (1) "a prospective contractual relationship must exist or have existed between the plaintiff and a third party;" (2) "defendant must have knowledge of this relationship;" (3) "defendant must have intended to harm plaintiff by preventing this relationship;" (4) "defendant must have had no privilege or justification;" and (5) defendant's conduct must have resulted in actual harm to plaintiff."  *Hakkasan LV, LLC v. VIP, UNLTD, LLC*, 63 F. Supp. 3d 1259, 1268 (D. Nev. 2014).

Here, Defendant intended to harm NAC's prospective contractual relationships with its customers by contacting them and spreading misinformation about NAC.  More specifically, Defendant directly interfered with NAC' prospective contractual relationship with the Aten Coin Holder, while trying to use him as a vehicle for interference with other prospective economic relationships. Defendant gained knowledge of these relationships through the use of NAC's Confidential Information and subsequently utilized that information in an intentional attempt to harm NAC's business.  Further, Defendant had no privilege or justification for his actions, which are malicious attempts to harm NAC following his demand to alter the terms of the Purchase Agreement.  As set forth herein, these intentional and tortious acts have damaged NAC.  NAC is highly likely to prevail on this claim, making injunctive relief appropriate.

. . .

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

10 of 15

4852-4597-8932, v. 3

e. *Aiding and Abetting.*

Even though the Court need not get to the Aiding and Abetting claim, NAC is likely to prevail there as well. Under Nevada law, "to establish aiding and abetting in the civil context, a plaintiff must show (1) the primary violator breached a duty that injured the plaintiff, (2) the alleged aider and abettor "was aware of its role in promoting [the breach] at the time it provided assistance," and (3) the alleged aider and abetter "knowingly and substantially assisted" the primary violator in committing the breach." *Terrell v. Cent. Washington Asphalt, Inc.*, No. 211CV00142APGVCF, 2016 WL 950906, at *7 (D. Nev. Mar. 7, 2016). The second and third prongs of this test should be weighed together such that greater evidence to one requires less evidence of the other. *Id.* Substantial assistance equates to encouragement in the form of "direct communication, or conduct in close proximity to, the tortfeasor." *Id.*

Here, using NAC Confidential Information with the intent to defame and disparage NAC, Defendant has aided and abetted his wife, Brandi Jodoin, further interfering with NAC's contractual relations and prospective economic advantage. As these actions began during the Working Relationship with NAC, this is a direct breach of her duty as Chief Administrative Officer under the Working Relationship. As Defendant was concurrently engaged in similar or identical efforts to harm NAC, Defendant was fully aware of his role in promoting this action by Ms. Jodoin's duty to NAC. Defendant knowingly and substantially assisted Ms. Jodoin in her efforts to harm NAC by assisting and encouraging her communications with third parties. As set forth herein, NAC has suffered harm as a direct and proximate result of Defendant's actions, and is highly likely to prevail on the merits of this claim.

As set forth herein, NAC is likely to prevail on each and every claim set forth in the Complaint. Even if, however, NAC were only to prevail on the claim of breach of the NDA, an agreement that expressly provides for injunctive relief, which would provide sufficient justification for issuance of a TRO and a preliminary injunction.

2. <u>NAC has suffered irreparable harm as a result of Defendant's conduct.</u>

Actions that harm a company's reputation, customer goodwill, or access to new clients constitute irreparable harm for which an injunction is appropriate. *Stuhlbarg Int'l Sales Co. v.*

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

11 of 15

4852-4597-8932, v. 3

*John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable.")

The NDA explicitly sets forth that "irreparable injury may result" if the NDA is breached. (Andrade Decl. Ex. 1-A ¶ 8). NAC is a young company offering a very valuable alternative in the digital currency market. Interest expressed at its Warsaw and Chicago conferences has been tremendous. The Company is a critical juncture, and Defendant's repeated and continuous disparagement and interference with NAC's business has and will continue to irreparably harm NAC, if not enjoined. The disclosure of Confidential Information in this case is threatening NAC's ability to obtain prospective customers, harming the goodwill NAC has with its client base and prospective clients, and is likely to irreparably harm NAC's business reputation. In this quickly developing market no one has the ability to assess and somehow repair damage to goodwill and reputation. Defendant's ongoing defamatory and harmful communications with NAC clients, investors, contractors, and others identified via NAC's Confidential Information is directly interfering with NAC's ability to conduct its business. Accordingly, NAC is suffering, and will suffer, immediate, ongoing, and irreparable harm at the hands of Defendant, making emergency injunctive relief essential.

3. <u>The balance of hardships tips sharply in favor of an injunction.</u>

NAC asks the Court for a temporary restraining order, and subsequent preliminary injunction, consistent with the terms and spirit of the NDA Defendant signed. These would enjoin Defendant, and anyone acting in concert with Defendant, from (a) disseminating any Confidential Information to third parties as prohibited by the NDA; (b) falsely holding themselves out as an employee or agent of NAC; and (c) contacting customers, investors, contractors, and others identified through the use of NAC's private records. As for balancing these restrictions, Defendant will suffer no harm at all. No equities favor him. Defendant has no right to interfere with NAC's coin holders, investors, or vendors. On the other hand, NAC stands to be harmed tremendously if Defendant is not stopped from continuing with his tortious acts.

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

12 of 15

4852-4597-8932, v. 3

Defendant's actions serve no beneficial purpose to Defendant other than to satisfy Defendant's desire to harm NAC.  The fact that Defendant, even after NAC's cease and desist demand, actively solicited and induced a third party, the Aten Coin Holder, to attend the Aten Coin 2016 Conference with the sole intent of disparaging NAC illustrates the ongoing and hostile nature of Defendant's actions.  This kind of subterfuge provides no actual substantive benefit to Defendant, unless he expects to strong-arm some payment from NAC.  Thus, if this Court enters a temporary restraining order, and subsequently a preliminary injunction against such actions, the only result is the Defendant being prohibited from doing something he is contractually bound not to do -- to continue harming NAC.  By contrast, NAC receives protection from immediate and irreparable harm caused by Defendant's ongoing campaign against it.

    4.  <u>It is in the public interest to prevent Defendant's behavior from continuing.</u>

While courts are required to question "whether there exists some critical public interest that would be injured by the grant of" a temporary restraining order," the lack of such a public interest against injunctive relief weighs in favor of approval of such relief.  *Wellness Coaches USA, LLC v. MGM Resorts Int'l*, No. 2:15-CV-01593-JAD, 2015 WL 5146701, at *7 (D. Nev. Sept. 1, 2015) (internal quotations omitted) (upholding a narrowly tailored restraining order prohibiting a party from "acquiring, disclosing or using" another company's confidential information, finding that no public interest would be injured.)

As in *Wellness Coaches USA, LLC*, there is no clear public interest here that would be injured as a result of granting NAC's requested relief.  Nonetheless, in these days of fast paced information technology, one can say with a straight face that enforcing a written confidentiality agreement to avoid use of Confidential Information for the sole purpose of interfering  with another's clients, investors, and contractors, is consistent with the public's interest in fostering innovation and development of digital technology.

**B.     The bond required by FRCP 65 should be minimal.**

The relief sought by virtue of this TRO and motion for preliminary injunction is designed to prevent the further contractual breaches and tortious conduct of the Defendant, and those

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

4852-4597-8932, v. 3

13 of 15

1  acting in concert with him; nothing more. The bond amount is established in order to compensate
2  a defendant if the Court has erred in entering the requested relief.  A bond is required but should
3  be nominal, because cannot possibly suffer and compensable harm from being enjoined for
4  disclosing confidential information or interfering with NAC's business.

5      NAC seeks no relief sought that is inconsistent with what Defendant already agreed to do
6  when it executed the NDA.  Preventing Defendant from engaging in interference and defamatory
7  conduct cannot cause the Defendant to incur any loss as a result.  Defendant is not a competitor
8  being prohibited from speaking to his potential customers. The only party exposed to damage in
9  this case is NAC, who will continue to suffer at the hands of the Defendant unless emergency
10 injunctive relief, and then preliminary injunctive relief, is granted.  Therefore, only a nominal
11 bond should be required, and immediate emergency injunctive relief should be granted.

## **CONCLUSION**

13     For the reasons stated above, the Plaintiff asks this Court to issue a TRO, followed by a
14 preliminary injunction enjoining the Defendant, and anyone acting in concert with him, as
15 follows:

16 - Defendant, and anyone acting in concert with Defendant, shall be restrained
17   disclosing Confidential Information or from using it for any purpose, including but
18   not limited to the purpose of disparaging or defaming NAC, its principal and
19   affiliates, or interfering with NAC's, its principal's or affiliates' contractual and/or
20   prospective economic relationships;
21 - Defendant, and anyone acting in concert with Defendant, shall be restrained from
22   falsely holding themselves out as employees or agents of NAC; and

23 . . .
24 . . .
25 . . .
26 . . .
27 . . .
28 . . .

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
725-777-3000

14 of 15

4852-4597-8932, v. 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Defendants, and anyone acting in concert with Defendant, shall be restrained from any and all contact with NAC customers, investors, contractors, or any other third party whose information was obtained via NAC Confidential Information.

Dated this 12th day of July, 2016.

                                          GARMAN TURNER GORDON LLP

                                          /s/ Eric R. Olsen
                                          ERIC R. OLSEN
                                          Nevada Bar No. 3127
                                          MICHAEL R. ESPOSITO
                                          Nevada Bar No. 13482
                                          650 White Drive, Suite 100
                                          Las Vegas, Nevada 89119
                                          Tel: (725) 777-3000
                                          Fax: (725) 777-3112
                                          *Attorneys for Plaintiff*

4852-4597-8932, v. 3